**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**WENDY L. MEADE,**

      **Plaintiff,**

v.                                **Case No.  8:09-cv-02027-T-27AEP**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff in this case seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits.[1]  Because the Commissioner of Social Security did not properly evaluate medical evidence of record, I recommend that the Commissioner's decision be reversed and the matter remanded for further consideration.

### I.

Plaintiff was thirty-seven years of age at the time of her administrative hearing on January 29, 2009.  (Tr. 21, 27.)  She stands 5'10" tall and weighs 125 pounds.  (Tr. 28, 124.)  Plaintiff earned a GED and is able to communicate in English.  (Tr. 29, 124.)  She previously worked as a convenience store cashier, receptionist, office helper, and a bank teller.  (Tr. 30-31,

---

[1]  This matter comes before the undersigned pursuant to a Standing Order of this Court.  (*See* Dkt. No. 3); *see also* Local Rules 3.05(c)(1)(B) and 6.01(c)(21).

53-54, 126, 148-57.)  On April 26, 2006, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging a disability beginning January 21, 2006 (Tr. 112) due to panic attacks, panic disorder, right knee problems, and bilateral carpal tunnel syndrome (Tr. 33-34, 125).  Plaintiff's claims were denied initially on August 7, 2006 (Tr. 74-75), and upon reconsideration on December 1, 2006 (Tr. 84-86).  Thereafter, Plaintiff timely filed a written request for hearing.  (Tr. 90.)

At the administrative hearing held at Plaintiff's request on January 29, 2009, before an Administrative Law Judge ("ALJ"), Plaintiff was represented by Michele Marois, a non-attorney representative, and testified on her own behalf.  (Tr. 11, 21-59.)  Also before the ALJ were medical records outlining Plaintiff's medical history.  These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

The ALJ found that Plaintiff has severe impairments consisting of "Anxiety (with Panic Attacks) with some lumbalgia and Osgood Schlatter disease / patella alta of the right knee, by history."  (Tr. 14, Finding 3.)  The ALJ noted that Plaintiff "also cited CTS, scapular arthralgic deficit, allergies and non-specific ocular disturbance, non [*sic*] of which are documented in the medical record."  (Tr. 14, Finding 3.)  The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 14, Finding 4.)  In reaching this conclusion, the ALJ considered Dr. Karl Jones' September 13, 2006 opinion noting that Plaintiff "was relegated to what amounts to 'less than sedentary' work, with a restriction to 'marked' restrictions in activities of daily living, socialization, and in concentration . . . since 1999."  (Tr.

2

15.)  The ALJ noted that Dr. Jones' opinion was "unique, minimally explained and superseded by later, less supportive records from Dr. Nardone that may better describe [Plaintiff's] status and reflect her level of functioning."  (Tr. 15.)  The ALJ acknowledged that "Dr. Nardone did not treat the appellant during the time at issue as did Dr. Jones . . . but the extreme restrictions imposed by [Plaintiff's] former treating psychiatrist are not supported by the evidence in general and are internally inconsistent."  (Tr. 15.)

Based upon the record, the ALJ found that Plaintiff has the residual functional capacity to perform a restricted range of "light" work.  (Tr. 16, Finding 5.)  The ALJ further concluded that through the date last insured, Plaintiff was able to perform her past relevant work.  (Tr. 19, Finding 5.)  Therefore, the ALJ found Plaintiff not disabled.  (Tr. 20, Finding 6.)  The Appeals Council denied Plaintiff's request for review (Tr. 1-3) and Plaintiff subsequently filed the instant action (Dkt. No. 1).

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id*. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[2] Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

Plaintiff challenges the ALJ's decision on two grounds:

(1) the ALJ failed to properly evaluate all of the medical opinions; and

(2) the ALJ's determination of Plaintiff's Residual Functional Capacity ("RFC") was not supported by substantial evidence.

As an initial matter, to establish entitlement to disability insurance benefits under Title II of the Social Security Act, Plaintiff must be found to be disabled prior to the date of expiration of his or her insured status. 42 U.S.C. § 423(a), (c); 20 C.F.R. § 404.101, 404.315; *see also Carnes v. Sullivan*, 936 F.2d 1215, 1219 n.1 (11th Cir. 1991); *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981). Any impairment that had its onset or became disabling after this critical date cannot be the basis for a favorable finding of disability under Title II. In this case, Plaintiff alleged disability beginning January 21, 2006, and her date of last insured was September 30,

5

2006. Thus, this is the relevant time period for purposes of determining whether Plaintiff is entitled to disability benefits.

For the reasons discussed below, the Court finds that the ALJ failed to properly evaluate all medical opinions, and therefore recommends that her decision be reversed and the case remanded for further proceedings.

### 1. The ALJ's Evaluation of Medical Opinions

Plaintiff argues that the ALJ did not properly evaluate the opinions of the treating and examining mental health physicians. (Dkt. No. 17 at 7.) First, Plaintiff refers to Dr. Gerald Hodan's July 25, 2006 consultative examination report, claiming that the ALJ erred by failing to explain the weight given to Dr. Hodan's opinion that Plaintiff would not be a reliable worker and that she would do best in a low stress work setting, and the reasons for discrediting his findings. (*Id*. at 3.) Second, Plaintiff alleges that the ALJ did not explain any reasons for rejecting Dr. Lia Nardone's March 21, 2007 opinion that Plaintiff is unable to maintain employment due to her panic disorder. (*Id*. at 3-4.) Third, Plaintiff contends that the ALJ erred by failing to evaluate Dr. Hector Corzo's May 9, 2006 psychological examination and failing to state the reasons for disregarding it. (*Id*. at 5.) Fourth and lastly, Plaintiff claims that the ALJ erred in evaluating Dr. Karl Jones' medical opinion. (*Id*.)

Social Security Regulations "establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion." *Belge v. Astrue*, No. 3:09-cv-529-J-JRK, 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010). Under this hierarchy, "the opinions of examining physicians are generally given more weight than

nonexamining physicians; treating physicians receive more weight that nontreating physicians; and specialists on issues within their areas of expertise receive more weight than nonspecialists." *Id*. (internal citations and quotations omitted).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d).   Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  *Lewis*, 125 F.3d at 1440.   Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error.  *MacGregor*, 786 F.2d at 1053.   Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record.  *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).   In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true.  *MacGregor*, at 1053.

On the other hand, a consulting physician's opinion "deserves no special weight." *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007); *see also McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (the opinions of consultative examiners not entitled to deference "because

7

as one-time examiners they were not treating physicians"). Nonetheless, "[t]he opinion of a consultative physician . . . is still a medical opinion deserving of consideration along with all of the other evidence." *Hindle v. Astrue*, No. 4:09cv422-RH/WCS, 2010 WL 4683996, at *15 (N.D. Fla. Oct. 6, 2010). Moreover, "[i]f the opinion of a consulting physician is consistent with other medical evidence, it is entitled to great weight." *Id.* (*citing Moncrief v. Astrue*, 300 F. App'x 879, 881 (11th Cir. 2008)).

In this instance, Plaintiff alleges that the ALJ erred in his analysis of the opinions of four physicians: Drs. Nardone, Corzo, Hodan, and Jones. Both Drs. Hodan and Corzo were consulting physicians who examined Plaintiff on one occasion. Drs. Nardone and Jones, on the other hand, were treating physicians who treated Plaintiff over a period of time.

### (1) Dr. Nardone

Plaintiff alleges that the ALJ mischaracterized Dr. Nardone's records, specifically, Dr. Nardone's opinion that Plaintiff was unable to maintain regular employment secondary to the severity and recurrence of her panic disorder. (Dkt. No. 17 at 4.) As Plaintiff recognizes, Dr. Nardone treated Plaintiff after the date last insured. Nevertheless, the ALJ considered Dr. Nardone's opinion and noted that it "may better describe [Plaintiff's] status and reflect her level of functioning" when compared with Dr. Jones' medical opinion. (Tr. 15); *see also Boyd v. Heckler*, 704 F.2d 1207 (11th Cir. 1983)[3] ("We adopt the position of the Second and Seventh Circuits that a treating physician's opinion is still entitled to significant weight notwithstanding

---

[3] *Boyd* has been superseded by statute on other grounds. *See Elam v. R.R. Ret. Bd.*, 921 F.2d 1210 (11th Cir. 1991).

that he did not treat the claimant until after the relevant determination date."). The ALJ relied

upon Dr. Nardone's opinions in evaluating Plaintiff's RFC, noting, for example, that in 2008-9,

Dr. Nardone "did not emphasize cognitive deficiencies." (Tr. 17.) As Plaintiff indicates,

however, on March of 2007, Dr. Nardone noted that Plaintiff's current GAF was 50[4] and that

Plaintiff was unable to maintain regular employment due to the severity and recurrence of her

panic disorder. (Tr. 256.) Thus, the ALJ improperly relied on certain of Dr. Nardone's findings,

while ignoring her conclusion that Plaintiff cannot maintain regular employment. *See Gay v.

Astrue*, No. 3:09-cv-679-JRK, 2010 WL 3220299, at *7 n.8 (M.D. Fla. Aug. 13, 2010) (*citing

McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986)) ("Although an ALJ is not required

to discuss every piece of evidence in a record, an ALJ cannot pick and choose which evidence

supports a decision while disregarding evidence to the contrary."). Moreover, the ALJ failed to

explain her reasons for discounting Dr. Nardone's conclusion regarding Plaintiff's ability to

maintain regular employment.

The Commissioner argues that "[t]he ALJ did not mischaracterize Dr. Nardone's

opinion as Plaintiff has suggested, the ALJ merely did not accept her legal conclusion." (Dkt.

---

[4] The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc.2000).

No. 18 at 10.)   According to the Commissioner, "[w]hether Plaintiff can work is a legal conclusion that is reserved for the Commissioner." (*Id*.) While the Commissioner is correct that "a treating physician's opinion that a patient is 'unable to work' or is 'disabled' is not dispositive for purposes of Social Security claims," such opinion "must not be ignored, and the Commissioner must examine the entire record to determine whether such opinion[] [is] supported by the record." *See Carnley v. Astrue*, No. 5:09cv6-RH/MD, 2010 WL 940988, at *5 (N.D. Fla. Mar. 13, 2010) (*citing* SSR 96-5p).   The ALJ was required to resolve any inconsistencies in the evidence and explain her basis for not crediting any of Dr. Nardone's conclusions.   The ALJ determined that Plaintiff can perform a restricted range of light work, ignoring Dr. Nardone's opinion that  Plaintiff is unable to maintain regular employment due to the severity of her panic disorder.   As such, the ALJ's decision is not supported by substantial evidence and the Court recommends that it be reversed and the case remanded for further findings.

### (2) Dr. Corzo

Plaintiff next argues that the ALJ erred in failing to evaluate Dr. Corzo's medical opinion, and specifically his assessment of Plaintiff's GAF score as 45.  (Dkt. No. 4-5.)  Dr. Corzo examined Plaintiff on May 9, 2006, and diagnosed her with panic disorder, substance dependance, and cluster "B" traits, indicating a GAF score of 45.  In response to Plaintiff's argument, the Commissioner urges that the ALJ did not err by failing to credit Dr. Corzo's GAF score because he also inconsistently noted the score as being "mild," his exam notes "were that Plaintiff had no anxiety, mild depression and normal speech and thought" and because "[t]here

10

are several other GAF scores in the record such as findings of 60 in February 2006 and 75 in October 2006 by Dr. Jones (Tr. 330, 338); and 65 by Dr. Nardone in November 2006 (Tr. 266)." (Dkt. No. 18 at 11.)

As discussed above, the Regulations dictate that when considering medical opinions, the administration "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [ ] receive[d]."  20 C.F.R. §§ 404.1527(b), 416.927(b). Additionally, Social Security Ruling ("SSR") 96-8p, which addresses RFC assessments at steps four and five of the sequential evaluation, dictates that the ALJ must consider and address medical source opinions and directs that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[5]  SSR 96-8p.

Upon consideration, this Court agrees with Plaintiff that the ALJ erred in not expressly addressing the conclusions of Dr. Corzo.  Although Dr. Corzo's GAF score assessment may be inconsistent with his own notes and the record, as the Commissioner argues, the ALJ was obliged, at a minimum, to explain his conclusion and the weight given to Dr. Corzo's findings. *See McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (stating that while "[t]he ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion," the ALJ is, however, required "to state with particularity the weight he gives to different medical opinions and the reasons why"); *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) (finding that ALJ must state the weight accorded each item of impairment evidence and the reasons to

---

[5]  In this circuit, such rulings are not binding on the court but are entitled to deference.  *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994).

accept or reject that evidence); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (same). Under these circumstances, the ALJ was not at liberty to leave her conclusions about Dr. Corzo's report unexplained.  While the Court makes no finding as to the weight to be given Dr. Corzo's assessment, the Court recommends that this case be remanded for further evaluation of his report by the ALJ and a clear statement as to the weight afforded his assessment.

### (3) Dr. Hodan

Plaintiff also claims that the ALJ erred by not explaining "the weight given to Dr. Hodan's opinion nor why Dr. Hodan's findings regarding unreliability and need for low stress were discredited." (Dkt. No. 17 at 3.)  As the Commissioner indicates, Dr. Hodan performed a one-time consultative examination of Plaintiff on July 25, 2006.  (Tr. 371-74.)  Dr. Hodan concluded that Plaintiff's "main difficulty is going to be reliability," and that she "is still agoraphobic, becoming anxious at the thought of leaving the house and, thus, not likely to be a very reliable worker."  (Tr. 373-74.)  He also noted that "[b]ecause of her proneness to anxiety symptoms, she would do best in a low stress work setting."  (Tr. 374.)  The Commissioner contends that the Dr. Hodan's findings "are not inconsistent with the ALJ's mental RFC finding that Plaintiff could perform unskilled work involving one to two step instructions, simple repetitive tasks and standardized situations."  (Dkt. No. 18 at 9.)

In finding that Plaintiff is limited to "unskilled work involving 1-2 step instructions, simple repetitive tasks, and standardized situations," the ALJ noted that Plaintiff "had a history of responsible (clerical) work," and that "[t]he clinical notes . . . reference only periodic and specific problems unrelated to daily activities, such as fear of flying or bridges, rather than global

inability to interact." (Tr. 17-18.)  It appears that these observations may be inconsistent with Dr. Hodan's opinion that Plaintiff's agoraphobia may prevent her from leaving her house. Because the Court recommends remanding the case for further evaluation of Drs. Nardone and Corzo's opinions, it also recommends that on remand, the ALJ be directed to consider Dr. Hodan's conclusions regarding Plaintiff's reliability and need for a low stress work setting, and specifically note the weight given to them. *See Cotton v. Comm'r of Soc. Sec.*, No. 3:09-cv-45-J-34MCR, 2010 WL 746445, at *6 (M.D. Fla. Mar. 3, 2010) (*citing Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985))  ("Without the ALJ stating the specific weight given to different medical opinions and the reasons therefore, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence.").

### (4) Dr. Jones

Plaintiff also contends that the ALJ erred in considering Dr. Jones' medical opinion. (Dkt. No. 17 at 5-6.)  Specifically, Plaintiff states that one of the reasons cited by the ALJ in discrediting Dr. Jones' opinion was its inconsistency with other medical evidence, including Dr. Nardone's and Dr. Hodan's medical opinions.  (*Id*.)  In light of this Court's recommendation that this case be remanded for further considerations of Dr. Nardone's and Dr. Hodan's opinions, the Court recommends that the ALJ be directed to consider all other medical evidence appropriate for consideration, including Dr. Jones' report.

### 2. **The ALJ's Determination of Plaintiff's RFC**

Plaintiff's second argument is that the ALJ erred in evaluating Plaintiff's RFC.  (Dkt. No. 17 at 8.)  RFC is defined as the most Plaintiff "can still do despite [her] limitations."  20

13

C.F.R. § 404.1545(a).  RFC is an assessment "based on all of the relevant medical and other evidence."  *Id*.  Additionally, as noted above SSR 96-8p dictates that the ALJ must consider and address medical source opinions in the RFC assessment and directs that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p.

In this instance, because the ALJ did not properly consider all medical evidence of record, the Court will not address Plaintiff's argument regarding the ALJ's RFC finding as it is dependent on a correct evaluation of all medical source opinions.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986).  For the reasons previously discussed, the Court recommends that the ALJ's decision be reversed and the case be remanded for further consideration of the medical evidence of record consistent with this Report and Recommendation.

### IV.

For the foregoing reasons, it is **RECOMMENDED** that:

(1) the decision of the Commissioner b**e REVERSED** and the case **REMANDED** for further administrative proceedings consistent with this Report and Recommendation; and

(2) the Clerk of Court be directed to enter final judgment in favor of Plaintiff.

**IT IS SO REPORTED** at Tampa, Florida on this 17th day of December, 2010.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

14

## <u>NOTICE TO PARTIES</u>

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*


Copies furnished to:
Hon. James D. Whittemore
Counsel of Record